# ALUMINUM COMPANY OF AMERICA *v.* Brad J. GUTHRIE

88-42                                        753 S.W.2d 538

Supreme Court of Arkansas
Opinion delivered July 18, 1988

*Rose Law Firm, A Professional Association*, by: *Phillip Carroll*, for appellant.

*Boswell, Tucker & Brewster*, by: *Ted Boswell*, for appellee.

DAVID NEWBERN, Justice. ■ This is a personal injury case in which the appellee, Brad J. Guthrie, was awarded a judgment of $450,000 against the appellant, Aluminum Company of America. Guthrie contended he was severely injured when he fell from a bridge owned by Alcoa. Alcoa contends its motion for directed verdict should have been granted because the evidence showed Guthrie to have been a trespasser, or at most a licensee, of whose presence it was unaware and to whom it owed no duty of care. We must reverse the judgment because the court refused to give the standard instructions on the duty owed to a person who comes on another's land as an invitee, licensee, or trespasser. Instead, the court erroneously gave AMI 1109 which deals with failure to maintain a structure on one's own land so that it will do no injury on the land of another. Given the court's misapprehension as to the law applicable in the case, we decline Alcoa's invitation to hold a directed verdict should have been granted on the ground that the jury could not have found Guthrie to be other than a trespasser. For purposes of retrial, we will deal with two evidentiary issues. First, we conclude it was not an abuse of the judge's discretion to refuse to admit evidence of an earlier trespass allegedly committed by Guthrie. Second, the court should not have allowed evidence that Alcoa had erected fencing to prohibit pedestrian entry onto a bridge similar to the one involved here.

Guthrie and two friends went to Lost Lake after dark. One friend got in the water to swim, but the other friend summoned

her back to the bank and told her Guthrie had left and they should look for him. The three had been drinking, but the amount, and whether Guthrie was drunk when the accident occurred is disputed. The two friends searched the area briefly and then left in their car. They found Guthrie on the pavement of a highway directly beneath the bridge owned by Alcoa. Others had noticed him lying there, and had summoned medical aid.

Guthrie sustained injuries to his spine requiring surgery and a long rehabilitation period. He had no memory of the incident. No one saw him immediately before it happened. Some witnesses who stopped at the scene testified they concluded he had fallen from the bridge. When he was found, he was directly below an opening where grates were missing from the bridge structure. Guthrie's theory is that he was walking along the bridge in the darkness and fell some twenty feet to the pavement below because he was unable to see that the grates were missing. The bridge was formerly a railroad bridge. The tracks had been removed, and Alcoa used it to support a water line connecting its property on either side of the bridge. The grates, some of which were missing, formed a sort of walkway beside the place where the tracks had been.

There was evidence that Lost Lake is about 4,000 feet from the bridge, and on the other side of the bridge there is a ball playing field. Although an Alcoa security officer testified he had not been notified of persons using the bridge, there was evidence from which the jury could have concluded that it had been used frequently by members of the public as a walkway or as a place where children loitered. Although there were some "no trespassing" signs on Alcoa land in the vicinity of the bridge, there was no sign at the bridge, and there was no chain, fence, or other impediment to entrance upon it by a pedestrian.

At the conclusion of the trial, Alcoa renewed the directed verdict motion it had made at the end of Guthrie's case in chief, arguing that there was no evidence to show how the accident had happened and that in any event Guthrie was clearly a trespasser to whom no duty was owed by Alcoa. Alcoa also objected to the giving of AMI 1109, which had been requested by Guthrie, on the ground that it was inapplicable. The court denied the motion for directed verdict, refused Alcoa's tendered instructions on the law

of invitee, licensee, or trespasser, and gave AMI 1109.

## 1. AMI 1109

■ It was error for the court to instruct the jury in accordance with Arkansas Model Jury Instruction 1109 which reads as follows:

### DUTY OWED BY OWNER OR OCCUPIER OF LAND—INJURIES OR DAMAGES OFF PREMISES

It is the duty of an [owner] [occupier] of land to protect [persons] [and] [property] from damages resulting from [a structure] [an artificial condition] upon his land if

(A) he knows, or should know, of an unreasonable danger created by that [structure] [condition] and

[(B) he knows, or should know, that the danger exists without the consent of those affected by it, and]

(C) he fails, after having a reasonable opportunity, to eliminate the danger or otherwise to protect such [persons] [or] [property] against it.

A violation of this duty is negligence.

By ignoring the title accompanying the instruction, one might conclude, as the trial court apparently did, that the instruction fit the situation of this case. However, reference to the cases cited in the comment accompanying AMI 1109 should have made it clear that it should be used only when a dangerous structure or artificial condition on the defendant's land causes injury on the land of another. *See Tri-B Advertising Co.* v. *Thomas*, 278 Ark. 58, 643 S.W.2d 547 (1982); *Dye* v. *Burdick*, 262 Ark. 124, 553 S.W.2d 833 (1977). The comment also cites Restatement (Second) of Torts § 366 (1965), which leads to the same conclusion.

Guthrie argues that the injury was caused by Alcoa's failure to maintain the structure on its land, but that the injury occurred on highway 183, and thus the instruction fits because the injury occurred "off premises" as the model instruction's title suggests. That argument ignores the thrust of the model instruction which is that a landowner must exercise reasonable care for the

protection of those outside his premises. More importantly, it ignores the time-honored classifications with respect to the duty owed by a landowner to persons who enter his property. We recently reaffirmed our adherence to that law in *Baldwin v. Mosley*, 295 Ark. 285, 748 S.W.2d 146 (1988), where we were asked to abolish the invitee, licensee, and trespasser distinctions in favor of a general reasonable care standard.

## 2. Directed verdict

Given the trial court's misapprehension as to the law applicable in this case, we decline to hold that a verdict should have been directed in favor of Alcoa. Alcoa contends that Guthrie should not be given "another swing of the bat," citing cases in which we have examined evidence of record and concluded on appeal that a party was a trespasser to whom no duty of care was owed by the owner of land on which the injury occurred. No authority is cited, however, supporting the view that, where the court instructed the jury on an inapplicable theory of liability, we should examine the evidence with the correct theory in mind and not remand for a new trial if a jury could not have found for the plaintiff using the correct theory. We think in fairness we should remand, rather then dismiss, to allow the parties and the court to develop the case with the correct theory in mind. *See Kansas City Southern Ry. Co. v. Shane*, 225 Ark. 80, 279 S.W.2d 284 (1955).

As we do not know how the evidence will develop upon retrial, we decline to discuss the issue in detail, *see Missouri Pac. R.R. Co. v. Arkansas Sheriff's Boys' Ranch*, 280 Ark. 53, 655 S.W.2d 389 (1983); however, we note there was some evidence from which it might have been concluded that Guthrie was an implied invitee. *See Missouri Pac. R.R. Co. v. English*, 187 Ark. 557, 61 S.W.2d 445 (1933). *See also St. Louis I.M. & S. Ry. Co. v. Dooley*, 77 Ark. 561, 92 S.W. 789 (1906). *Cf. Chicago R.I. & P. Ry. Co. v. Harrison*, 204 Ark. 361, 162 S.W.2d 62 (1942); *Chicago R.I. & P. Ry. Co. v. Payne*, 103 Ark. 226, 146 S.W. 487 (1912). Again, we take no position on the point but commend the issue for development upon retrial.

## 3. Other trespass evidence

Alcoa was prevented, by the granting of a motion in limine, from introducing evidence that Guthrie had trespassed on

land owned by the Reynolds Aluminum Company fifteen days before the accident. The judge did not abuse his discretion by excluding that evidence. A.R.E. 403.

### 4. Photographs

Guthrie was allowed to introduce photographs showing that Alcoa had, prior to the accident, barricaded a bridge similar to the one involved here. Alcoa objected on the ground that the evidence was irrelevant and highly prejudicial. Alcoa's counsel stated that the fencing on the other bridge had been erected because that bridge had been struck by a logging truck and thus had become unstable. The objection was overruled.

We agree that the evidence was irrelevant and prejudicial and should not have been admitted. Alcoa did not contend that it could not have fenced the bridge involved in this case; it contended it was not required to do so. A.R.E. 401 and A.R.E. 403. *See also Foster* v. *Ford Motor Co.*, 621 F.2d 715 (5th Cir. 1980).

Reversed and remanded.

HICKMAN and GLAZE, JJ., concur.

TOM GLAZE, Justice, concurring. I agree with the majority that Arkansas Model Instruction 1109 is not applicable to the facts in this case. In reversing, the majority also is correct in remanding the cause for a new trial since our rule in reversing a law case is to remand the case for a new trial unless there be an affirmative showing that there can be no recovery. *K.C. Southern Ry. Co.* v. *Shane*, 225 Ark. 80, 279 S.W.2d 284 (1955). No such affirmative showing has been made.

As the majority points out, we are unable to know how the evidence will develop upon retrial, and it takes exception with the appellant's argument that the appellee could not be shown as an implied invitee. While I agree the facts might fall short of proving appellant is an implied invitee, the appellee is not limited to that rule. For example, although the general rule is that an owner of property owes no duty to a trespasser, an exception is found in AMI Civil 2d, 1106(B) which, in relevant part, provides as follows:

. . . he (the owner) owes a trespasser no duty until his

presence on the premises is known or reasonably should be known. Then the owner owes the trespasser only a duty not to cause injury by willful or wanton conduct. *If, however, the owner* knows or *reasonably should know that a trespasser is in a position of danger, he has a duty to use ordinary care to avoid injury to the trespasser.* (Emphasis added.)

To date, this court has had little to say about paragraph B of AMI 1106, but in *Tatum* v. *Rester*, 242 Ark. 271, 412 S.W.2d 293 (1967), we refused to pass upon its accuracy except to point out that it should not be given when there is no relationship between the plaintiff's cause of action and the conditions of the premises. The court further cautioned that it would not speculate upon whether or not a fact situation might arise which would justify the trial court in giving paragraph B. *Id.*

Thus, while AMI 1106(B) presently appears elusive in meaning and application, I cannot presume that 1106(B) would have no application on retrial. Also, another exception to the general rule concerning an owner's duty to trespassers is set out in the Restatement (Second) of Torts § 335 (1965); *see also* W. Prosser & W. Keeton, *The Law of Torts* § 58 (1984), for a discussion of the landowner's liability to a trespassing adult.[1] In sum, appellant has not affirmatively shown (as it must) that the law and the facts in this cause preclude the appellee from any recovery. Accordingly, this court is obliged to remand this matter

---

[1] § 335 Artificial Conditions Highly Dangerous to Constant Trespassers on Limited Area

A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if

(a)  the condition

(i)  is one which the possessor has created or maintains and

(ii)  is, to his knowledge, likely to cause death or seriously bodily harm to such trespassers and

(iii)  is of such a nature that he has reason to believe that such trespassers will not discover it, and

(b)  the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

for retrial.

HICKMAN, J., joins in this concurrence.